Magistrate Judge Grady J. Leupold

1
2
3
4
5
6

```
_____ FILED    _____ LODGED
                _____ RECEIVED

              Jun 04, 2025

          CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY
```

7
8
9

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10    UNITED STATES OF AMERICA,

11                    Plaintiff

12

13                    v.

14

15    ELMER EDWARD ALCORN,

16                    Defendants.

CASE NO. 3:25-MJ-5217

COMPLAINT for VIOLATIONS
Title 21, U.S.C. Sections 841(a)(1), 841
(b)(1)(A)

17
18        BEFORE, Grady J. Leupold, United States Magistrate Judge, U. S. Courthouse,

19    Tacoma, Washington.

20        The undersigned complainant being duly sworn states:

21                              **<u>COUNT 1</u>**

22        **(Possession of Controlled Substances with Intent to Distribute)**

23    On or about May 14, 2025, in Clark County, within the Western District of

24    Washington, ELMER EDWARD ALCORN did knowingly and intentionally

25    possess, with the intent to distribute, controlled substances, including:

26    methamphetamine, a substance controlled under Title 21, United States Code.

27

Complaint - 1
*United States v. Alcorn*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

It is further alleged that the offense involved 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts isomers or salts of its isomers.

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

And the complainant states that this Complaint is based on the following information:

I, Joshua Betonte, being first duly sworn on oath, depose and say:

## INTRODUCTION AND AGENT BACKGROUND

1.     I have been employed as a Task Force Officer by the Drug Enforcement Administration (DEA) since March 2023. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2.     My current assignment is at the Portland District Office where I am assigned to a DEA federal task force. My formal education includes a Bachelor of Science in Criminal Justice. My formal law enforcement training includes receiving over 500 hours of training as documented by the Department of Public Safety Standards and Training (DPSST) and a 400-hour Basic Police Academy. I currently possess an Advanced Police Certification.

3.     I have participated in multiple drug investigations involving controlled purchase operations, surveillance, arrests, interdiction, vehicle tracking, cell phone geo-location techniques, trap and trace orders, and Title III wiretaps. I have interviewed and operated informants, executed search warrants, arrested and interviewed subjects involved in the smuggling and distribution of narcotics, conducted physical surveillance,

Complaint - 2
*United States v. Alcorn*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  and utilized electronic and video surveillance. I have also worked with and consulted

2  numerous agents and law enforcement officers who have investigated drug trafficking

3  offenses.

4      4.      Based on the facts set forth in this affidavit, there is probable cause to

5  believe that **ELMER EDWARD ALCORN ("ALCORN")** has violated 21 U.S.C.

6  Sections 841(a)(1) and 841 (b)(1)(A), possession with intent to distribute controlled

7  substances. The facts set forth in this affidavit are based on my own personal knowledge;

8  knowledge obtained from other individuals during my participation in this investigation,

9  including other law enforcement personnel; review of documents and records related to

10  this investigation; communications with others who have personal knowledge of the

11  events and circumstances described herein; and information gained through my training

12  and experience. Because this affidavit is submitted for the limited purpose of establishing

13  probable cause, it does not set forth each and every fact that I or others have learned

14  during the course of this investigation.

15                    <u>**SUMMARY OF INVESTIGATION**</u>

16                        <u>Source of Information</u>

17      5.      Confidential Source ("CS") has been providing information to the Westside

18  Interagency Narcotics team (WIN) since January of 2025. CS's criminal convictions

19  include Assault in the Fourth Degree, Felon in Possession of a Prohibited Firearm,

20  probation violations, contempt of court, and Unlawful Dissemination of an Intimate

21  Image. CS was encountered by police for unlawful entry into a vehicle and felon in

22  possession of a firearm in late 2024. CS agreed to cooperate with the government in

23  exchange for consideration on sentencing for the Felon in Possession of a Prohibited

24  Firearm for which he was found guilty. No threats or promises regarding these criminal

25  charges were made by the government in exchange for CS's cooperation. Nor has CS

26  been paid or received any immigration benefits as a result of cooperation.

27

Complaint - 3
*United States v. Alcorn*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

6.      CS has no convictions for crimes of dishonesty or deceit, such as fraud, identity theft, or making false reports to police. CS has provided information that has been independently corroborated and has led to successful controlled purchases of narcotics. CS has demonstrated knowledge about current drug trafficking trends that I know to be true based on my training and experience.

Investigators identify DTO Cell in Vancouver, Washington

7.      Agents and officers from DEA, Homeland Security Investigations (HSI), Tigard Police Department (TPD), Beaverton Police Department (BPD), Washington County Sheriff's Office (WCSO), and Sherwood Police Department (SPD) assigned to DEA-led federal task force, (hereinafter collectively referred to as "Investigators") are investigating a drug trafficking organization (DTO). Investigators have identified a DTO cell facilitated by **ALCORN**, who is located in Vancouver, Washington.

8.      As detailed below, Investigators have learned that **ALCORN** physically delivers drugs to drug customers and collects drug proceeds from drug customers. **ALCORN** is suspected of importing methamphetamine from other states for further distribution with cells operating in Oregon and Washington. Investigators seized (including packaging) approximately 438 grams of methamphetamine via controlled buys from **ALCORN** leading up to a search warrant execution.

April 2025: recorded communications with Alcorn

9.      In late April 2025, CS notified Investigators that they had been in contact with **ALCORN** the day prior. **ALCORN** was using phone number (971) 901-5501. CS sent Investigators screen shots of text communications between CS and **ALCORN**. The text communications were of **ALCORN** and CS discussing prices for different weights of methamphetamine, and places to meet to complete the sale of the methamphetamine. Based on my training and experience, I know that the weights and prices discussed between **ALCORN** and CS via text communications were consistent with typical prices and weight for methamphetamine in this area. I further observed on the top of those

Complaint - 4
*United States v. Alcorn*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    screenshots, the phone number (971) 901-5501 with the caller ID name "Elmer Alcorn"

2    under it.

3              April 2025: Geolocation data of Alcorn

4        10.    In late April 2025, Investigators obtained a cellphone GPS location

5    services, and historical data search warrant from the Washington County Circuit Court in

6    Hillsboro, Oregon. On April 25, 2025, at about 12:48pm, Investigators began to receive

7    GPS locations for **ALCORN**'s cellphone at ten-minute intervals.

8        11.    At about 8:48pm on April 25, 2025, **ALCORN**'s cellphone became active

9    and began traveling south on U.S. Interstate Highway-5 (I-5) from Portland, OR. The

10   cellphone GPS pings were consistent at 10-minute intervals and **ALCORN**'s cellphone

11   steadily continued south on I-5 toward the state of California. About five hours later, on

12   April 26, 2025, at 1:58am, **ALCORN**'s cellphone GPS placed his cellphone still

13   traveling south at the Oregon-California border, which is a direct drive from Portland to

14   the California border on I-5.

15       12.    I know due to my training and experience, that large quantities of illicit

16   controlled substance are often imported and/or manufactured in California. Further, based

17   on my training and experience, I understand that when large scale drug traffickers

18   operating out of Oregon or Washington are out of narcotics, they will drive directly to a

19   source city in California to source their narcotics for a significant discount. They will

20   then turn around and drive directly back to their customer base area. This is often referred

21   to and is known as a "suicide run." ALCORN's actions on April 25-26 — a nonstop

22   drive, and short stop in California, followed by a nonstop return — are consistent with a

23   "suicide run."

24       13.    Given the information about the quantity of narcotic distributed by

25   **ALCORN**, the suspect nature of his travel patterns, and, as discussed below, the fact that

26   very shortly after this trip **ALCORN** sold one (1) pound of methamphetamine, I believe

27

Complaint - 5
*United States v. Alcorn*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    **ALCORN** traveled to California to source a significant quantity of methamphetamine, to

2    then drive back north to his customer base in Oregon.

3          14.     After **ALCORN** turned on his "work' cellphone and started traveling south

4    towards California on I-5, Investigators were notified by **ALCORN**'s cellphone GPS,

5    less than 24 hours later, that **ALCORN**'s cellphone had reentered Oregon at the

6    California border traveling north on I5.

7          15.     Investigators set up on I-5 northbound; to conduct surveillance in order to

8    identify **ALCORN** and interdict what they suspected would be a large quantity of

9    methamphetamine. Investigators drove northbound on I-5 and began surveilling vehicles

10    traveling north.

11          16.     During the surveillance, Investigators documented and observed, on

12    multiple occasions, a silver Dodge Caliber with Oregon license plate 374KPZ, registered

13    to a R.W., out of Salem, Oregon. However, the Dodge Caliber was consistently two to

14    three miles north of the radius of accuracy for **ALCORN**'s cellphone GPS locations.

15    Investigators initially discounted the Dodge Caliber as a vehicle associated with

16    **ALCORN**'s cellphone GPS locations.

17          17.     It was later determined that the GPS notification from T-Mobile for

18    **ALCORN**'s cellphone were not real time locations but were rather delayed notifications

19    by two to three minutes. These delayed GPS locations caused it to appear that

20    **ALCORN**'s cellphone location was two to three miles south of the radius of accuracy for

21    **ALCORN**'s cellphone GPS locations, throughout the surveillance on I-5 north.

22    Accordingly, Investigators now believe that the Dodge Caliber was ALCORN.

23          18.     On April 30, 2025, Investigators went to 20901 NE 95th Street in

24    Vancouver, Washington, **ALCORN's** known residence as detailed below, and observed

25    the same Dodge Caliber with Oregon plate 374KPZ parked in the driveway of the

26    residence.

27

Complaint - 6
*United States v. Alcorn*

<u>May 2025: Controlled Purchase Organized by Alcorn</u>

19.    In early May 2025, under guidance from Investigators, CS contacted **ALCORN** to arrange for a controlled purchase of a large quantity of methamphetamine. **ALCORN** agreed to sell methamphetamine to CS in Vancouver, WA.

20.    Investigators met CS at predetermined location. Investigators searched CS and CS's vehicle for weapons, drugs, and other contraband, but did not find any. Under the guidance of Investigators, CS contacted **ALCORN** to confirm the controlled purchase. **ALCORN** confirmed the controlled purchase, stating that CS should come to **ALCORN's** residence at 20901 NE 95th Street in Vancouver, WA. Investigators provided CS with U.S. currency and an audio recording device. Investigators observed CS get into the driver's seat of CS's vehicle then saw CS's vehicle drive directly to the deal location.

21.    CS arrived at the residence and called **ALCORN**. **ALCORN** directed CS to come to the door. CS followed the instructions and went inside the residence. CS went to the southern end of the residence. While inside the residence, **ALCORN** sold CS over one pound of methamphetamine in exchange for U.S. Currency.

22.    After the controlled purchase was completed, Investigators maintained surveillance as CS's vehicle drove from the deal location directly back to the predetermined staging location. Investigators retrieved the audio recording device from CS. Immediately after, CS gave Investigators a clear plastic bag containing a crystalline substance that later field tested positive for methamphetamine. Investigators searched CS and CS's vehicle for weapons, drugs, and other contraband but did not find any.

<u>May 2025: Alcorn residence confirmation and execution of search warrant</u>

23.    Investigators were informed by analysts using open-source information that **ALCORN** was associated to a property located at 20901 NE 95th St., Vancouver WA. This address was listed as **ALCORN's** residence through Oregon Department of Motor Vehicles (DMV). Public real property records indicate that **ALCORN** is the owner of the

Complaint - 7
*United States v. Alcorn*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    residence and that he acquired the property in a trust from the Alcorn Family Trust.

2    Investigators in Clark County Washington accessed Clark County Geographic

3    Information Services to confirm **ALCORN** as the listed property owner for the Target

4    Residence.

5        24.    On May 13, 2025, law enforcement obtained a search warrant from the

6    Federal District Court for the Western District of Washington for **ALCORN's** residence

7    (20901 NE 95th Street in Vancouver, Washington – the same location from which CS

8    bought methamphetamine above), **ALCORN's** person, and the Dodge Caliber.

9        25.    Upon law enforcement's arrival **ALCORN** attempted to flee, running from

10   the residence into a nearby wooded area. He was later located by a Vancouver Police

11   Department police dog and transported to a nearby hospital for follow on treatment.

12       26.    On May 14, 2025, at approximately 10:45am, law enforcement executed

13   the search warrant. Two other individuals, R.W. (the person to whom the Dodge Caliber

14   is registered) and **ALCORN's** romantic partner, J.A., were found on the scene and

15   detained without incident.

16       27.    After securing the premises, law enforcement began searching **ALCORN's**

17   residence and the Dodge Caliber. Within the vehicle, officers recovered over two (2)

18   pounds of suspected methamphetamine as well as a digital scale and plastic baggies.

19   Based on my training and experience, this quantity of controlled substance is inconsistent

20   with personal use and digital scales and plastic baggies are indicia of drug trafficking.

21       28.    In the residence, officers located approximately 440 grams of

22   methamphetamine in a black tote bag in a large room attached to the living room on the

23   first floor. Officers recovered over $52,000 in U.S. currency within a safe located in a

24   small utility room on the first floor near the backdoor of the residence. In a home office

25   on the first floor, officers seized an additional 240 grams of suspected methamphetamine

26   and a revolver pistol within a desk. On top of that desk, officers located **ALCORN's**

27   cellphone and wallet with identification and bank cards. Also on the first floor, in a utility

Complaint - 8
*United States v. Alcorn*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

room with access to the back yard was a cooler which contained 8.9 pounds of methamphetamine. Within a detached garage located across from the residence, officers obtained another two (2) pounds of suspected methamphetamine.

29.     On the second floor, in a spare bedroom, officers recovered dozens of firearms, including suspected machine guns and short-barreled shotguns. In the same room as the firearms, officers recovered three (3) pounds of suspected psilocybin. In another second-floor bedroom, later confirmed by J.A. as **ALCORN's**, officers recovered approximately 274 grams Adderall, 2.8 pounds psilocybin, and over $17,500 in U.S. currency. Additionally, within the room was a United States Postal Service Package addressed to **ALCORN**. Also on the second floor, within a guest bedroom, was a box containing **ALCORN's** tax returns.

30.     Additionally, in an accessory dwelling unit located off the property occupied by R.W., officers recovered 3.2 pounds of methamphetamine

31.     **ALCORN**'s romantic partner was interviewed as officers searched the residence. He stated that he moved into the residence in March of 2025. He stated that no one else lived in the main residence aside from **ALCORN**. He stated that the firearms belonged to **ALCORN** and he denied knowledge that **ALCORN** was selling methamphetamine.

32.     In total, the search yielded approximately 8,232 grams of methamphetamine, 2,685 grams of psilocybin, 51 firearms including suspected machine guns and short-barreled shotguns, and over $70,000 in cash.

//

//

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14



*Items seized during search of ALCORN's residence*

15

16   //

17   //

18   //

19

20

21

22

23

24

25

26

27

Complaint - 10
*United States v. Alcorn*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

33.     Based on the above facts, I respectfully submit that there is probable cause to believe that **ALCORN** did possess controlled substances with intent to distribute in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

JOSHUA BETONTE     Digitally signed by JOSHUA
(Affiliate)                    BETONTE (Affiliate)
                                   Date: 2025.06.03 12:48:55 -07'00'

Joshua Betonte, Complainant
Task Force Officer
Drug Enforcement Administration

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendant committed the offense set forth in the Complaint.

Dated this 4th day of June, 2025.

Grady J. Leupold
United States Magistrate Judge

Complaint - 11
*United States v. Alcorn*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970